UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAYOR FRANK JACKSON, *et al.*, | ) | Case No.: 1:11 CV 1334 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| CLEVELAND CLINIC FOUNDATION, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

The City of Cleveland and Mayor Frank G. Jackson ("Plaintiffs" or "Cleveland") brought the above-captioned action against the Cleveland Clinic Foundation ("Defendant" or "Clinic" ), seeking injunctive relief to compel the Clinic to continue operating one of its regional hospitals, Huron Hospital ("Huron"). In its Complaint, Plaintiffs allege that Defendant violated Title VI, 42 U.S.C. § 2000d, breached charitable trust obligations, and breached tax-exempt bond contracts through its decision to close Huron Hospital. (Compl., ECF No. 1, ¶¶18-33.) Defendant seeks dismissal of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). ( Def.'s Mot. to Dismiss, ECF No. 11.) For the following reasons, the court grants Defendant's Motion.

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiff City of Cleveland, Ohio is a municipal corporation organized and existing under the laws of the State of Ohio and pursuant to a municipal charter. (Compl., ¶ 1.) Plaintiff, Mayor Frank Jackson is the duly elected Mayor for the City of Cleveland. (*Id.* at ¶ 3.) Defendant is a private, not-for-profit corporation organized under the laws of the State of Ohio. (*Id.* at ¶ 4.) Defendant currently

has in excess of $1.4 billion dollars in tax-exempt bonds from the State of Ohio. (*Id.* at ¶ 34.) Further, Defendant is a charitable corporation and holds tax-exempt status under 26 U.S.C. § 501(c)(3). (*Id.* at ¶ 5.) Defendant receives and accepts federal funding to support the delivery of health care services, including, but not limited to, the receipt of payment from Medicaid and Medicare. (*Id.* at ¶ 7.)

Huron Hospital is a level II trauma facility located in the City of East Cleveland and is one of ten regional hospitals that are part of Defendant's hospital system acquired by Defendant through a merger with Meridia Hospital Systems in 1997. ( *Id.* at ¶ 29.) Huron Hospital provides essential in-patient services, basic emergency room care, and Level II trauma services. (*Id.* at ¶ 30.) Huron Hospital has maintained a Level II Trauma Care Unit for over 15 years and its current Level II trauma certification is valid through October, 2013. (*Id.* at ¶ 11.) Huron Hospital serves the residents of East Cleveland and Cleveland's east-side residents. (*Id.* at ¶ 13.)

On or about November 2009, the Clinic and MetroHealth System agreed to coordinate the delivery of vital trauma services by establishing a network of trauma centers. (*Id.* at ¶ 31.) Defendant formed the Northern Ohio Regional Trauma Network ("NORTN") with MetroHealth System, the only Level I trauma center in the region) to provide advice, expertise and coordinated trauma care at the Clinic's Level II trauma centers of Fairview, Huron, Lakewood and Hillcrest hospitals. (*Id.*) Dr. Gus Kious, president of Huron, has stated that Huron serves the Clinic system's highest number of poor, is the second busiest trauma center in the region next to MetroHealth, and serves more patients with wounds caused by penetration, such as gun shots and knives, than any other hospital in the state. (*Id.* at ¶ 39.)

Defendant has announced its intention to transfer Level II trauma care services from Huron

Hospital to Hillcrest Hospital located in the City of Mayfield, Ohio. (*Id.* at ¶ 42.) Defendant has further announced its intention to cease all emergency care services at Huron Hospital. (*Id.* at ¶ 43.) On October 27, 2010, Plaintiff first initiated litigation against the Cleveland Clinic Foundation after an announcement that the Clinic would cease to operate the emergency room at Huron Hospital as a Level II Trauma Care Unit. (*Id.* at ¶ 19.) As a result of the litigation, the parties agreed to meet and discuss proposed changes to emergency room services in an effort to eliminate any adverse impact to citizens requiring trauma care services currently provided at Huron Hospital. (*Id.* at ¶ 19.) Throughout the later part of 2010 to date, Plaintiffs, together with representatives of other affected communities have been in discussions with the Clinic concerning the continuation of trauma services at Huron Hospital. (*Id.* at ¶ 20.) Those discussions have included an acknowledgment that the closure of the Huron Hospital emergency room and trauma center will increase response time and commit Plaintiffs' emergency medical service providers to longer run times. (*Id.* at ¶ 21) Nevertheless, Defendant has decided to move forward with its plan to close Huron, giving rise to the instant suit.

Plaintiffs filed this action against the Clinic on June 29, 2011, seeking injunctive relief to compel the Clinic to continue operating Huron Hospital. (ECF No. 1.) On July 13, 2011, the Clinic filed a motion to dismiss for failure to state a claim (ECF No. 11); Cleveland responded on August 5, 2011 (ECF No. 15); and the Clinic filed its reply on August 13, 2011. (ECF No. 20.) On August 8, 2011, Cleveland filed a motion for a temporary retraining order and preliminary injunction, seeking to enjoin Defendant from further reducing services at Huron. (ECF No. 16.) On August 15, 2011, this court denied Plaintiffs' motion. (ECF No. 21.)

**II. STANDARD**

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must determine the legal sufficiency of the plaintiff's claim. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). *See also*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (clarifying the legal standard for a Rule 12(b)(6) motion to dismiss); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009)(same).

In making this determination, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations within as true, and determine whether the complaint possesses "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.*

For this analysis, a court may look beyond the allegations contained in the complaint to exhibits attached to or otherwise incorporated in the complaint, all without converting a motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Ultimately, this determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

### III. LEGAL ANALYSIS

Defendant's Motion seeks dismissal of Plaintiffs' claims for: (1) discrimination in violation of Title VI, 42 U.S.C. § 2000d; (2) breach of charitable trust obligations; and (3) breach of contract. The court addresses each claim in turn.

### A. Title VI

Section 2000d of Title VI of the Civil Rights Act of 1964, provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In *Alexander v. Sandoval*, the Supreme Court affirmed that "private individuals may sue to enforce [§ 2000d] of Title VI and obtain both injunctive relief and damages." 532 U.S. 275, 279 (2001). However, the Court held that § 2000d prohibits only *intentional* discrimination, and not activities having a disparate impact on protected groups. *Id.* at 280. ("[I]t is similarly beyond dispute–and no party disagrees–that [§ 2000d] prohibits only intentional discrimination.") In this case, Plaintiffs allege that "[t]he closure of Huron Hospital will have a disparate impact on the minority residents" of Cleveland. (Compl., ¶ 16.) Plaintiffs claim that "[w]hether or not intended, the Cleveland Clinic Foundation's actions violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d (1976)." (*Id.* at ¶ 26.)

Even assuming that a municipality may bring a Title VI claim on behalf of its residents, which Defendant disputes, Plaintiffs' claim under Title VI fails because Plaintiffs have not pled any facts that would support a claim of intentional discrimination. Rather, Cleveland alleges disparate impact only and supports its claim with two cases decided before *Sandoval*. (Pls.' Mem. in Opp'n

to Def.'s Mot. to Dismiss, ECF No. 15, at 5 (citing *Scelsa v. City Univ. of N.Y.*, 806 F. Supp. 1126 (S.D.N.Y. 1992); *N.A.A.C.P. v. Wilmington Med.Ctr., Inc.*, 491 F. Supp. 290 (D. Del. 1980)).)

To the extent these cases adopted a disparate impact test, however, they are no longer good law after *Sandoval*. In light of *Sandoval*, courts have routinely dismissed claims under Title VI for failure to assert plausible allegations of an intent to discriminate. *See, e.g.*, *Sudduth v. Donnelly*, 367 Fed. App'x 703, 705 (7th Cir. 2010) (dismissing complaint because "Title VI . . . protects only against intentional discrimination"); *Price ex rel. Price v. La. Dep't of Educ.*, 329 Fed. App'x 559, 561 (5th Cir. 2009) (dismissing complaint because it "falls short of the Title VI requirement that a litigant plead facts in support of intentional discrimination"); *Malik v. Continental Airlines Inc.*, 305 Fed. App'x 165, 169–70 (5th Cir. 2008) (dismissing complaint because Title VI "requires a litigant to plead facts in support of intentional discrimination"); *Moss v. Columbus Bd. of Educ.*, No. 2:00-CV-855, 2002 WL 31007397, at *3 (S.D. Ohio Aug. 19, 2002) (noting that, after *Sandoval*, "a claim under Title VI requires that Plaintiffs allege intentional discrimination; the claim may not be proven by way of disparate impact").

In their response to Defendant's Motion, Plaintiffs elaborate on the allegation made in their Complaint by stating that "Defendant's deliberate indifference to the consequences of Huron's closure and its discriminatory impact of Plaintiff's minority residents is fairly set forth in the complaint." (Pls.' Mem., at 7.) Plaintiffs, however, made no allegation of "deliberate indifference" on the part of Defendant in their Complaint, pleading no facts that would support a claim under this "'stringent standard of fault' . . . for which 'even heightened negligence will not suffice.'" *Plinton v. Cnty. of Summit*, 540 F.3d 459, 465 (6th Cir. 2008) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407, 410 (1997)). Because Plaintiffs have failed to allege "sufficient

factual matter … to 'state a claim'" of *intentional discrimination* "'that is plausible on its face,'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570), this court dismisses Plaintiffs' Title VI claim.

### B. Breach of Charitable Trust

Plaintiffs claim that by "accepting federal, state, and local tax exemptions, and further accepting tax exempt funding, as well as its voluntary participation in NOTS, the Cleveland Clinic Foundation created and entered into a public charitable trust to provide essential Level II trauma care and emergency room services in a fair and equitable manner." (Compl., ¶ 36.) Plaintiffs allege that by virtue of the charitable trust, "the Cleveland Clinic Foundation owes a fiduciary duty to the citizens within its service area " (*Id.* at ¶ 37), and that the Clinic's decision to close Huron constitutes a breach of the Clinic's fiduciary obligations, and therefore a breach of the charitable trust. (*Id.* at ¶¶ 51–55.)

Defendant argues that Plaintiffs' breach of charitable trust claim should be dismissed for three separate reasons. First, Defendant argues that under Ohio law, Plaintiffs lack authority to enforce charitable trust obligations. (Def.'s Mot. to Dismiss, Mem. of Law in Supp., ECF No. 12, at 13–14.) Second, Defendant argues that Plaintiffs have failed to allege that the Clinic had a charitable obligation or duty to keep Huron open. (*Id.* at 14–16.) Lastly, Defendant argues that even if such a charitable duty exists, trustees have wide discretion in managing charitable assets, and Plaintiffs have failed to allege that the Clinic has diverted funds to uncharitable purposes. (*Id.* at 17.) The Court agrees with Defendant and finds that Plaintiffs have failed to state a claim for breach of charitable trust obligations.

As an initial matter, Plaintiffs conclude that a charitable trust exists in this case without alleging any facts that would support that conclusion. Plaintiffs fail to allege any language from the Clinic's tax-exempt bond documents creating a charitable trust or dictating the specific services the Clinic must provide. Nor does Cleveland identify any contractual term from the Clinic's participation in NOTS or any declaration by the Clinic's founders (either in articles of incorporation or elsewhere), that either creates a charitable trust or requires it to operate Huron Hospital. Under Ohio law, charitable trusts are *express* trusts that are created, not by tax-exempt status or funds, but by an expression by the settlor of an intent to create a trust for the benefit of the public. Ohio R.C. §§ 5801.01, 5804.02(A)(2); *Peterson v. Teodosio*, 34 Ohio St. 2d 161, 172 (Ohio 1973) ("An express trust arises by reason of a manifested intention to create it.").

Thus, courts have routinely rejected claims that an *implied* charitable trust arises out tax-exempt status. *See, e.g.*, *Lorens v. Catholic Health Partners*, 356 F. Supp. 2d 827, 834 (N.D. Ohio 2005) (granting motion to dismiss where complaint "present[ed] no allegation other than a bare legal conclusion that 501(c)(3) created a charitable trust"); *Sabeta v. Baptist Hosp. of Miami*, 410 F. Supp. 2d 1224 (S.D. Fla. 2005) ("plaintiffs have failed to allege the existence of any trust instrument, and . . . S. 501(c)(3) status, in and of itself, is insufficient to . . . establish a charitable trust"); *Quinn v. BJC Health Sys.*, 364 F. Supp. 2d 1046, 1052–53 (E.D. Mo. 2005). Federal pleading standards require more than Plaintiffs' "mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

Even assuming that the Clinic's tax-exempt status (or receipt of tax-exempt funds) did create a charitable trust, Plaintiff nevertheless lacks standing to sue for breach of such a trust. Ohio charitable-trust law authorizes only the Attorney General to bring suit to enforce a charitable trust. *See* Ohio R.C. § 109.24. Section 109.24 "establishes the authority of the Attorney General to

administrate and enforce charitable trusts." *Plant v. Upper Valley Med. Ctr., Inc.*, No. 95-CA-52, 1996 WL 185341, at *2 (Ohio App. 2d Dist. Apr. 19, 1996). The statute requires the Attorney General to "institute and prosecute a proper action to enforce the performance of any charitable trust, and to restrain the abuse of it whenever he considers such action advisable or if directed to do so by the governor, the supreme court, the general assembly, or either house of the general assembly." Ohio R.C. § 109.24. Importantly, the statute does not authorize other parties from enforcing a charitable trust—"[s]ince the enforcement of a charitable trust is done in the interest of the general public, the attorney general is the proper party to prosecute the claim." *Plant*, 1996 WL 185341, at *3.

Plaintiffs assert that they may sue to enforce charitable trust obligations because the mayor is a "public officer who lawfully represents the entire community." (Pls.' Mem., at 13–14.) The authority on which Plaintiffs rely, however, supports the Clinic's position. *Plant* held that Ohio R.C. § 109.24 "grants absolute control of the prosecution for the enforcement of a charitable trust to the Attorney General," and "lacks any language that would . . . confer power to prosecute a charitable trust on any other entity." 1996 WL 185341, at *3. While the court in *Plant* noted that "[w]here the action effects the entire community, the proper party to bring the suit is the public officer that lawfully represents the entire community," *Id*., Plaintiffs here do not represent the entire community. Plaintiffs do not even represent East Cleveland, the community in which Huron Hospital is located.

Because Plaintiffs have failed to plead sufficient facts to support a claim that a charitable trust exists requiring Defendant to keep Huron open, and because Plaintiffs would in any event lack standing to enforce such a charitable trust, the court need not address Defendant's final

-9-

argument—that Plaintiffs also failed to adequately allege a breach of a charitable trust. The court notes, however, that a trustee ordinarily has wide discretion to administer a charitable trust in a way that effectuates its charitable purpose. *See* Ohio R.C. § 109.23(A) (defining "charitable trust" which subjects trustee to "fiduciary duties to deal with the property within this state for any charitable, religious, or educational purpose"). In their Complaint, Plaintiffs fail to allege that through its closure of Huron, the Clinic is diverting charitable assets to impermissible purposes.

### C. Breach of Contract Claim

Plaintiffs' breach of contract claim fails for similar reasons. Plaintiff alleges that the Clinic has "accepted over $1.4 billion dollars in tax exempt funding from the State of Ohio" (Compl., ¶ 58), and that "acceptance of such funding constitutes a contract between the Cleveland Clinic Foundation and the citizens of the State of Ohio." (*Id.* at ¶ 59.) Plaintiff further alleges that the acceptance of this funding "requires the Cleveland Clinic to continue to provide for the fair and equitable deliver [sic] of essential medical services to the citizens of East Cleveland and Cleveland" (*Id.* at ¶ 60), and that therefore the decision to close Huron and transfer services to Hillcrest Hospital "constitutes a breach of contract." (*Id.* at ¶ 61.) Plaintiffs brought this action "in a representative capacity on behalf of their citizens who are adversely affected by Huron's closure." (Pls.' Mem., at 11).

Defendant raised three grounds for dismissal. First, Defendant argues that Plaintiffs may not bring suit to enforce any potential tax-exempt bond contracts with the state of Ohio. (Def.'s Mem., at 18.) Plaintiffs admit in their Complaint that the bonds accepted by the Clinic constitute a contract with the State of Ohio, not the municipality of Cleveland (Compl., ¶ 59), and therefore Plaintiffs are not parties to the contracts. (Def.'s Mem., at 18.) Nor are Plaintiffs third-party beneficiaries under

such contracts. (*Id.*) Second, Defendant argues that Plaintiffs' contract claim should be dismissed because Plaintiffs seek an unavailable remedy–injunctive relief, particularly specific performance of medical services. (*Id.* at 19.) Lastly, Defendant argues that Plaintiffs have in any event failed to adequately plead a claim for breach of contract. (*Id.* at 20.)

The court agrees with Defendant that Plaintiffs allegations fall far short of stating a claim for breach of contract. In their response, Plaintiffs disclaim that they are suing as third-party beneficiaries, and instead assert that they are suing on behalf of Cleveland residents whom Plaintiffs allege to be third-party beneficiaries. (Pls.' Mem., at 11.) However, Cleveland may not sue to enforce its residents' rights—"courts have consistently held that municipalities are not vested with the power to protect [their residents' interests] under the theory of parens patriae." *Karst Envt'l Educ. & Prot., Inc. v. Fed. Highway Admin.*, No. 1:10-CV-00154-R, 2011 WL 1434608, at *6 (W.D. Ky. Apr. 14, 2011); *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 892 (E.D. Pa. 2000) ("The City's instant suit is, in reality, an application of power which has been primarily entrusted to *the state*.") (emphasis added); *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 131 (9th Cir. 1973); *Town of Brookline v. Operation Rescue*, 762 F. Supp. 1521, 1524 (D. Mass. 1991).

Moreover, even if Plaintiffs are authorized to sue under the alleged contracts, Cleveland has failed to plead a plausible claim for breach. Cleveland claims that it adequately alleged breach through the averment that the Clinic's "closure of Huron constitutes a breach of [the] contract" to provide medical services to residents. (Pls.' Mem., at 10.) This allegation, however, is a legal conclusion and the court therefore disregards it. *See Iqbal*, 129 S. Ct. at 1949. Plaintiffs' Complaint fails to allege *facts* or a specific contract provision that required the "delivery of essential medical services" at Huron (Pls.' Mem., at 10), or a provision that indicates that closing Huron would breach

-11-

this alleged contract. Because Plaintiffs' claim for breach of contract rests on conclusory allegations, this claim too falls short of pleading a plausible claim. *See Iqbal*, 129 S. Ct. at 1949.

Lastly, as this court noted in its Order denying Plaintiffs' Motion for a Temporary Restraining Order, there are serious questions as to whether the final remedy Cleveland apparently seeks—an injunction requiring the Clinic to continue operating Huron Hospital as a Level II trauma unit—is available here. (Order Den. Pls.' Mot for TRO, ECF No. 21, at 8.) However, having found that Plaintiffs may not sue under the alleged tax-exempt bond contracts and that Plaintiffs have otherwise failed to adequately allege a breach of such contracts, the court need not rule on this issue.

## IV. CONCLUSION

For the foregoing reasons, the court hereby grants Defendant's Motion To Dismiss Plaintiffs' Title VI, breach of contract, and breach of charitable trust claims. (ECF No. 11.)

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

September 9, 2011